# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

PRECISION SEED CO., et al.,

           :

   Plaintiffs,       Case No. 3:03-cv-079

           :

  -vs-         Chief Magistrate Judge Michael R. Merz

CONSOLIDATED GRAIN & BARGE
 COMPANY,

           :

   Defendant.

---

## DECISION AND ORDER DISMISSING PLAINTIFFS' CLAIM UNDER THE SHERMAN ACT

---

This case is before the Court on Defendant's third Motion for Partial Summary Judgment ("Third SJ Motion," Doc. Nos. 105) which is fully briefed (Doc. Nos. 114, 120).

**Procedural History**

This case was initially filed in the Greene County Common Pleas Court and then removed to this Court on May 12, 2003 (Notice of Removal, Doc. No. 1). Plaintiffs filed their First Amended Complaint October 2, 2003, asserting breach of contract, tortious interference with business relationships, breach of fiduciary duty, fraud, misappropriation of trade secrets, violation of §2 of the Sherman Act, and conversion (Doc. No. 41). Defendant then filed its first Motion for Partial Summary Judgment on the Second, Third, Fifth, and Sixth Claims for Relief (Doc. No. 51). On August 4, 2004, Judge Rose granted that Motion in part and denied it in part as follows:

1.   Defendant's Motion was denied in its entirety as to the Sixth Claim for Relief,

monopolization and attempted monopolization under §2 of the Sherman Act, 15 U.S.C. §2 (Doc. No. 63 at 21).

2.      As to the Third Claim for Relief on breach of fiduciary duty, Judge Rose held that the parol evidence rule applies to the parties' Marketing Plan and that therefore evidence outside the Thru-Put Agreement (Exhibit A to Doc. No. 41) could not be considered as to the Marketing Plan. *Id*. at 22. While the parol evidence rule was held not to apply to the Seed Program and Seed Manual, Plaintiffs were held to be precluded by lack of evidence from showing that an oral partnership had been formed with the Defendant, but the Court left open a claim of whether Defendant owed Plaintiffs a fiduciary duty regarding an attempted formation of an oral partnership and any remedies which might be available when negotiations looking toward such a partnership are unsuccessful. *Id*.

3.      As to the Fifth Claim for Relief on misappropriation of trade secrets, the Court held the parol evidence rules precluded any evidence that Plaintiffs' Customer List was a trade secret, but that there were genuine issues of material fact on whether the Seed Manual was a trade secret and whether Defendant obtained it in a confidential relationship. *Id*.

4.      The Motion was granted in its entirety as to the Second Claim for Relief, tortious interference with business relationships. *Id*.

In conclusion, Judge Rose held:

> The following claims remain to be adjudicated: breach of the Thru-Put Agreement; breach of fiduciary duty with regard to actions that occurred in preliminary negotiations about a partnership involving the Seed Program and Seed Manual; fraud; misappropriation of trade secrets regarding the Seed Manual; violation of the Sherman Act; and conversion.

*Id*. at 23.

This case was initially referred to the Magistrate Judge on June 2, 2005, under 28 U.S.C.

§636(b) (Doc. No. 83).  On July 12, 2005, the case was, upon the unanimous consent of the parties, referred to the Magistrate Judge under 28 U.S.C. §636(c) (Doc. No. 99).  On March 30, 2006, the Court granted in part and denied in part Defendant's second Motion for Partial Summary Judgment (Doc. No.   ), dismissing portions of the First and Fourth Claims for Relief and denying dismissal of the Sixth Claim for relief.  The case remains set for trial to a jury on May 22, 2006.

On December 8, 2005, Defendant filed its instant third Motion for Partial Summary Judgment (Doc. No. 105).  In accordance with the Scheduling Order (Doc. No. 75), that was the last date on which dispositive motions could be filed.  Thus any claims which survive the instant Motion will be tried in May.

In its instant Motion, Defendant seeks dismissal of Plaintiff's Fifth and Sixth Claims for Relief.  The Court incorporates here by reference the standards for considering summary judgment motions and for ruling on questions of state law set forth in its Decision and Order on Defendant's Second Motion for Partial Summary Judgment.

The Court has been able to complete its analysis of Plaintiffs' claim under the Sherman Act (Sixth Claim for Relief) and thus files that decision now; the decision on the Fifth Claim for Relief is deferred for decision as early as possible in April, 2006.

**Sixth Claim for Relief: Violation of §2 of the Sherman Act**

In the instant Motion, Defendant again seeks dismissal of Plaintiffs' Sherman Act §2 claims of monopolization and attempted monopolization.

"Section two of the Sherman Act prohibits illegal monopolization. Illegal monopolization consists of '(1) possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident.'"  *Tarrant Serv. Agency v. American*

3

*Standard*, 12 F. 3d 609, 613 (6th Cir. 1993), *quoting  United States v. Grinnell Corp.,* 384 U.S. 563, 570-71, 16 L. Ed. 2d 778, 86 S. Ct. 1698 (1966).  "A claim for attempted monopolization under section two of the Sherman Act requires: (1) a specific intent to monopolize; (2) anti-competitive conduct; and (3) a dangerous probability of success." *Id*. at 615, citing *Arthur S. Langenderfer, Inc. v. S.E. Johnson, Co.*, 917 F.2d 1413, 1431 (6th Cir. 1990), *cert. denied*, 116 L. Ed. 2d 29, 112 S. Ct. 51 (1991).

Relying on Mr. Martin's testimony, Defendant demonstrates that Plaintiffs have no proof of what share Consolidated has of the relevant market.  Mr. Martin admits he has no idea what percentage of farmers in Greene County bring all their business solely to Consolidated's Riverside facility as opposed to the other grain elevator operators who serve Greene County and that he has no idea whether anyone else has attempted to calculate market share on behalf of the Plaintiffs. (Martin Depo. at 114-117).

In opposing the Motion, Plaintiffs essentially concede that they have no proof of Defendant's share of the relevant market.  Instead, they argue they can prevail by showing that Defendant was able to control prices.  However, their argument on this point completely misunderstands what it means to be able to control prices in a Sherman Act context.  They assert "CGB single-handedly controlled prices at the Facilities and at its own Riverside location." (Memorandum in Opposition, Doc. No. 114 at 43).  They quote, as if it were conclusive, Defendant's manager Greg Beck's admission that "the ultimate end user, in this case CGB, sets the price."  *Id*., quoting Beck's deposition at 74.

However, the relevant power to control prices for Sherman Act purposes is the power to control the **market** price, not one's own price.  Every buyer has the power to set his own price for buying something.  That power is only meaningful in an economic context if it controls the price that all other buyers will pay or must pay for comparable goods.

4

Plaintiffs complain that Consolidated set the price it would pay at the Facilities low and the price it would pay at its Riverside facility sufficiently higher that none of the farmers would bring their grain to the Facilities and they offer Mr. Martin's deposition testimony to that effect.  (Martin Depo. at 294-95.)  However, they offer no proof that Consolidated's pricing at Riverside had any impact at all on any of the other grain elevator operators in Greene County.[1]  It was Plaintiffs who gave Consolidated the power to set the price of grain at the Facilities by entering into the Thru-Put Agreement.  If Plaintiffs were correct that there was a class of farmers who could not take their grain anywhere but the Facilities at the time the Thru-Put Agreement was signed, then Consolidated's act of raising the price it would pay at Riverside was pro-competitive: it increased the number of places those farmers could sell their grain.  Of course, it may have hurt Precision by reducing the amount of grain put through the Facilities, but it made the relevant market – sale of grain by small farmers in Greene County – more competitive.  As a rational buyer of grain, Consolidated would presumably minimize its total outlay for the grain it acquired.  That means its cost of buying the grain at a higher price from the farmer at Riverside would presumably be less than the sum of (1) the price it would pay for grain delivered to the Facilities plus (2) what it would have to pay Precision for handling the grain.  If, as Precision hypothesizes, the Facilities had a monopoly position (because the relevant market, farmers who were too small to go elsewhere, had to sell at the Facilities), then once it acquired exclusive use of the Facilities, one would have expected Consolidated, if it had true

---

[1]In ruling on the second Motion for Partial Summary Judgment, the Court denied dismissal of the Sherman Act claim because Defendant sought dismissal only on the ground that Plaintiffs had not defined a relevant market.  The Court found Plaintiffs' "recast" market definition – those Greene County farmers too small to use any other grain elevator except the Facilities – to be logical.  However, it makes no economic sense because, by definition, those farmers would be too small to use Consolidated's Riverside facility.  In that sense they cannot form an economically relevant market because Plaintiffs very claim is that these farmers have in fact been lured to the Riverside facility by higher prices.  If that is true, then Plaintiffs' "recast" market definition is of a non-existent market: there were no farmers that small.

5

monopoly pricing power, to lower the price it paid for grain at the Facilities, but not raise the price at Riverside so high that farmers could afford to sell there instead of at the Facilities.  In sum, Plaintiffs' own argument, if true, would show that Consolidated's behavior was pro-competitive. Plaintiffs are unable to show either that Consolidated had a market share from which monopoly power could reasonably be inferred or that it actually controlled prices in the relevant market. Plaintiffs are unable to show monopoly power and thus their claim of monopolization must fail; they are unable to show any of the three required elements of attempted monopolization.

Defendant is entitled to summary judgment on Plaintiffs' Sherman Act claim.


March 31, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge