**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

PRECISION SEED CO., et al.,
:
      Plaintiffs,                      Case No. 3:03-cv-079

:

    -vs-                                  Chief Magistrate Judge Michael R. Merz

CONSOLIDATED GRAIN & BARGE
 COMPANY,
:
      Defendant.

**DECISION ON PLAINTIFFS' MOTION FOR RECONSIDERATION
AND/OR CLARIFICATION**

This case is before the Court on Plaintiffs' Motion for Reconsideration of the Court's Decision and Order on Defendants' Second Motion for Summary Judgment (Doc. No. 133). Plaintiffs request the Court to rescind its Decision and Order of March 30, 2006 (the "Decision"), insofar as the Decision granted summary judgment on Plaintiffs' claim that Consolidated breached the so-called Thru-Put Agreement "either by not using its best efforts to market the Facilities or by diverting potential customers of the Facilities to other grain storage facilities." (Decision, Doc. No. 127, at 14). Alternatively, Plaintiffs ask the Court to clarify that the Decision does not preclude at trial "the evidence Plaintiff intends to offer regarding the diversion of customers away from the Facilities is relevant to the breach of contract claims in paragraphs 98(C) and (E) and to the Plaintiffs fraud and breach of fiduciary duty claims as well." (Motion, Doc. No. 133, at 4.) Defendant opposes the Motion (Memorandum in Opposition, Doc. No. 135).

Plaintiffs are correct that the Decision is interlocutory and therefore may properly be reconsidered by the Court prior to judgment. 1B Moore's Federal Practice ¶0.404 (1982). The Court

1

elects not to deny reconsideration on the bases asserted by Defendant (principally timeliness) and to address the merits of the Motion.

Plaintiffs continue to believe that Consolidated had a duty not to divert customers from the Plaintiffs' grain storage facilities to other facilities operated by Consolidated and thereby avoid paying Precision a handling fee under the Thru-Put Agreement. In opposing the Defendants' Second Motion for Partial Summary Judgment, Plaintiffs' relied on their interpretation of the language of the Thru-Put Agreement which Plaintiff David Martin interpreted as meaning Consolidated could not divert customers from Plaintiffs' facilities. The Court rejected that interpretation for the reasons set forth in the Decision.

Now Plaintiffs assert that the diversion of customers was somehow a breach of a separate duty of Consolidated to deal with Plaintiff reasonably and in good faith. That is, ¶ 98 of the First Amended Complaint alleges that Consolidated breached its duty of good faith and fair dealing to Precision in a number of ways, including "(C) Failing for no legitimate reason to use Precision in order to avoid its obligation to pay Precision its Handling Fee" and "(E) Failing to set a purchase price for grain at an amount that would make the Facilities competitive with CGB's Riverside facility."

Plaintiffs misapprehend the Court's Decision. The Court decided that Consolidated had no contractual duty not to divert customers to other Consolidated facilities. That necessarily implies that it had no duty to use Precision in order to generate for it a Handling Fee or to set a purchase price for grain that would make the Facilities competitive with the Riverside facility. Plaintiffs' breach of contract claims pleaded in ¶¶ 98(C) and 98(E) are to be dismissed with prejudice as a result of the Decision and **no** evidence of diversion of customers may be offered to support those claims because those claims are not to be tried.

As a basis for implying a general condition of good faith, reasonableness, and fair dealing,

2

Plaintiffs rely on *Littlejohn v. Parrish*, 163 Ohio App. 3d 456; 2005 Ohio 4850; 839 N.E.2d 49 (Ohio App. 1st Dist. 2005). Judge Painter wrote for the court:

> We conclude that public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. Any agreement--whether a lease, a secured loan, or something else--has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract.

*Id.* at P. 27. This Court assumes *arguendo* that *Littlejohn* states the law of Ohio on this point and is therefore binding on this Court under 28 U.S.C. §1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938)(See the discussion of present *Erie Railroad* law, Decision, Doc. No. 127, at 5-6).

In that case the First District Court of Appeals reversed a summary judgment decision for mortgagees who had refused to permit the mortgagors to pay off the 9% mortgage note early. Importantly, the court found the mortgagees were entitled to the benefit of their bargain, the discounted present value of payments at 9% for the life of the loan, and that they would be unreasonable if they refused to accept that value. But the court recites no evidence that the mortgagors offered to pay the discounted present value and merely assumes they did so. Thus the court protected the expressed expectations of both parties – mortgagors would pay and mortgagees would receive 9% interest. The only freight carried by the implied duty of good faith and reasonableness was to hold that the mortgagees could not "arbitrarily and unreasonably" withhold consent to prepayment and any refusal to accept the full benefit of their bargain would be arbitrary and unreasonable.

Here Plaintiffs want to turn the implied duty of good faith and fair dealing into an opportunity for Plaintiff Martin to testify about and recover, if the jury believes him, damages based on his own expectation or unexpressed intention about what the Thru-Put Agreement meant or

means. Such use of an implied duty of good faith and fair dealing would obliterate the notion of a written contract as the expression of mutual understandings and allow either party to ask a jury to construct for them the contract they would have liked to have had.

Upon reconsideration, then, the Court reaffirms its prior ruling: assuming that Consolidated diverted customers from Plaintiffs' Facilities to its own, it violated no duty to Plaintiffs in doing so.

Plaintiffs indicate they also intend to introduce evidence of the diversion of customers in support of their fraud and breach of fiduciary duty claims.

The only breach of fiduciary duty claim left after Judge Rose's decision on the first summary judgment motion is "a claim of whether Defendant owed Plaintiffs a fiduciary duty regarding an attempted formation of an oral partnership and any remedies which might be available when negotiations looking toward such a partnership are unsuccessful." (Doc. No. 63 at 22.) While the Decision was not intended to act as a decision on some hypothetical motion *in limine* as to the remaining breach of fiduciary duty claim, the Court does not understand how any diversion evidence would be relevant to that claim.

In the Decision, the Court granted summary judgment on part of the Plaintiffs' Fourth Claim for Relief for fraud, to wit, those claims set forth in ¶¶ 171, 172, and 173 of the First Amended Complaint, except for the claims made in ¶ 173 regarding the Seed Program. The Defendant did not seek summary judgment on that portion of ¶173 or on the alleged affirmative misrepresentation pled in ¶170 and those two claims remain for adjudication. The Court does not understand how the diversion evidence would be relevant to implementation of the Seed Program, although it might conceivably be relevant to the allegations in ¶170.

May 5, 2006.

                     s/ Michael R. Merz
                     Chief United States Magistrate Judge