**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

PRECISION SEED CO., et al.,

        Plaintiffs,        :        Case No. 3:03-cv-079

        -vs-        :        Chief Magistrate Judge Michael R. Merz

CONSOLIDATED GRAIN & BARGE
 COMPANY,

        Defendant.       :

---

**DECISION AND ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS**

---

        This case is before the Court on Plaintiff's Motion for Sanctions (Doc. No. 152). Defendant opposes the Motion (Doc. No. 162) and Plaintiff has filed a Reply Memorandum in Support (Doc. No. 167). The Motion was orally argued during the time originally set for the final pretrial conference on the afternoon of May 15, 2006. The Court appreciates the request for, and time spent by counsel on, the oral argument as it clarified the written argument considerably.

        Plaintiffs seek to have the Court sanction Defendant for its failure to produce four sets of documents: (1) merchandiser notes, (2) documents which Plaintiffs have obtained from Precision Soya, (3) settlement summaries, and (4) bid sheets for the third year of the Thru-Put Agreement.

        Plaintiffs' Motion for Sanctions is denied in its entirety for the reasons set forth below.

        First of all, the Motion is seriously untimely. This Court's General Order No. 1, applicable to pre-trial preparation and trials before all the judicial officers at the Dayton location of court, provides in pertinent part:

        There will be no continuation of discovery beyond the discovery cut-

>off date, absent express approval of the Court obtained upon a showing of good cause. While counsel may agree between themselves to a limited continuation of discovery beyond the discovery cut-off date, upon an amendment to the discovery plan approved and filed with this Court, there will be no supervision or intervention by the Court, such as a Fed. R. Civ. P. 37 request for sanctions, after the discovery cut-off date, without a showing of extreme circumstances. Counsel, therefore, face the possibility that the Court may not permit the completion of discovery, or the filing of a motion based thereon, prior to trial.

(General Order No. 1 as effective February 3, 2003, at 24; available at www.ohsd.uscourts.gov.)[1]

The purpose is obvious from the context: discovery motions filed after the discovery cut-off threaten the viability of a trial date.

The discovery cut-off in this case was November 3, 2005 (Amended Preliminary Pretrial Conference Order, Doc. No. 75). Not only was the instant Motion filed after discovery cut-off, it was filed more than six months after the discovery cut-off, on the virtual eve of trial (May 12, 2006, for a trial scheduled for May 22, 2006). Indeed, in their portion of the joint proposed final pretrial order (version filed May 12, 2006, Doc. No. 158), Plaintiffs acknowledge that discovery is not yet complete, but they have waited more than six months past the discovery cut-off to bring this to the Court's attention or to seek any relief. Nor is the Court aware of any justification for the delay. All of the issues raised in the Motion were known to Plaintiffs' counsel by the time of discovery cut-off.

Secondly, Plaintiffs' claims for sanctions are substantively without merit.

**1.    The Bid Sheets**

Plaintiffs ask the Court to sanction Defendant for not producing bid sheets (documents which

---

[1]Precisely the same language appears in the prior version of General Order No. 1, available at the same web address, and indeed has been in every version of General Order No. 1 since before the undersigned joined the Court in November, 1984.

show the price(s) paid by CGB to farmers for grain delivered to the Facilities[2]) for the last sixteen months of the Thru-Put Agreement (April, 2003, through August 2004). Defendant admits not producing those documents but asserts its non-production is justified by the following facts: Defendant produced 2,600 pages of bid sheets to Plaintiffs on March 4, 2004. When Plaintiffs filed their Motion to Compel a year ago, they admitted overlooking this production and apologized for having sone so (Motion to Compel, Doc. No. 77, at 15). Thus the Court made no order with respect to the bid sheets, but instead wrote "Topic No. 5 has been resolved" (Order, Doc. No. 101, at 4). So far as the record shows, Plaintiffs made no further reference to bid sheets until they requested them for the last sixteen months of the Thru-Put Agreement in March, 2006, four months after the close of discovery. Obviously, Defendant was not obliged to produce the last fourteen months of bid sheets in response to the March, 2006, request if that request is deemed an initial request for these documents; Plaintiffs can only prevail on their Motion for Sanctions as to the bid sheets if there was a prior obligation to provide the documents.

      Plaintiffs' assertion in the instant Motion (Doc. No. 152 at 10 & 14) that Defendant was obliged to produce these documents as a result of the Court's Order (Doc. No. 101) pursuant to Topic No. 4 is incorrect; Topic No. 4 does not deal with the bid sheets.

      Plaintiffs' alternative theory seems to be that Defendant should have produced these bid sheets as a supplement to its prior production without any further notice from Plaintiffs that they desired the documents. Defendant's prior production occurred on March 4, 2004, and the production cover letter clearly said that it was of bid sheets from 1995 through April, 2003 (Praiss letter to C. McNamee, Ex. 1 to Doc. No. 162). Given this production, Plaintiffs' counsel wrote in their Motion

---

[2]"Facilities" has the same meaning in this Order as given to it in prior Orders. The Court believes the parties understand the reference.

to Compel filed over a year later in May, 2005, that there was no further issue regarding bid sheets. The last six months of the bid sheets now sought did not exist in March, 2004, since they relate to the period of time between then and August, 2004. Plaintiffs' counsel have known since March, 2004, that they did not have any bid sheets after April, 2003, yet they waited for two years after that initial production to let Defendant know they wanted more bid sheets and then an additional two months to move for sanctions. Plaintiffs have not shown any entitlement to sanctions for Defendant's non-production of the bid sheets.

**2.     The Merchandiser Notebooks**

Attached to the Motion for Sanctions as Exhibit D are two pages purportedly taken from a notebook used by one of Defendant's merchandisers.[3] The first of these pages contains the note "cleaning facility?" and references to three types of soybeans, along with a reference to "Tomen," a Japanese firm affiliated with Defendant; the second page contains a reference to Precision Soya in London, Ohio, and a telephone number for "Ann," presumably associated with Precision Soya. Although these pages do not have a date, Plaintiffs represent that they were created in June, 2003, and should have been produced in response to Plaintiffs' Document Request No. 17 which asked for "Documents providing any information relevant to CGB's purchase, sale, development, or any other involvement with soybean seeds suitable for making tofu over the Relevant Time Period." (Motion, Doc. No. 152, at 12).

Plaintiffs claim and Defendant admits that these two pages were not produced until the end of the discovery period. Indeed, Defendant explains that they were produced in response to

---

[3]These pages do not bear Bates numbers, but the Court has been advised that they were produced by Defendant.

Plaintiffs' second request for the production of documents, which expressly asked for merchandiser's notes, and that they were among some 6,000 pages of such notes produced in response to that request.

While Defendant admits that the merchandiser notes were responsive to the second document request, it asserts it was not required to produce them in response to Request No. 17 of the first request because that request had been narrowed by Mr. McNamee's letter of January 29, 2004, which stated that what Plaintiffs sought in response to Document Request No. 17 was "Any documents evidencing or discussing any existing or proposed business relationship (past or present) between CGB (or its related entities) and the following companies: an Iowa company known as Pattison Brothers, Diener Seed, QTI Seed Company, Seed Consultants, and Stewart Seed Company." Plaintiffs' counsel expressly referred to this statement as a written refinement of the document request (Ex. B to Doc. No. 167).

Once Plaintiffs narrowed the scope of Document Request No. 17, Defendant was under no duty to respond, then or later, as if that document request included Precision Soya or any other company besides the firms listed in the narrowed request. The purpose of requiring parties to consult about objections to discovery before filing either motions to compel or for protective orders is to allow counsel an opportunity to clarify and narrow requests to obviate those objections. That is apparently what happened here. The Court treats Document Request No. 17 as effectively amended by Mr. McNamee's letter of January 29, 2004. Given that amendment, there was no obligation to produce the documents now labeled as Exhibit D to the instant Motion until they were requested by another descriptor, to wit, as merchandiser notes.

**3.     The Settlement Sheets**

The settlement sheets were the subject, inter alia, of the Court's Order compelling discovery (Doc. No. 101). Mr. Paul Kelly had represented to the Court by affidavit that producing these sheets required an average of twenty minutes. Plaintiffs now seek sanctions because they claim that when they deposed Mr. Kelly, it took him only three minutes to produce a settlement sheet.

Upon examining Mr. Kelly's deposition transcript, the Court concludes it is not inconsistent with the affidavit he filed.

Plaintiffs are therefore not entitled to sanctions with respect to the settlement sheets.

**4.     The Precision Soya Documents**

The keystone of Plaintiffs' Motion are documents they have received as a result of a subpoena served on Precision Soya. That subpoena was served on Precision Soya on October 27, 2005, and required that company to produce, on November 3, 2005, the following:

> Any and all documents, records, orders, invoices, specifications, instructions, notes, scale tickets, summary scale ticket reports, cleaning reports, grower contracts, letters of intent, emails or other correspondence, regardless of how or where such documents are maintained or stored, that refer, relate or pertain to Precision Alliance Group, Precision Soya and/or Alliance Production including any subsidiary or division of any of the foregoing, with Consolidated Grain and Barge Company ("CGB") from January 1, 2000.
>
> For purposes of this subpoena, "doing business with" includes, but is not limited to, processing, originating, bagging, cleaning, buying, selling, storing, warehousing, loading, analyzing, testing or handling soybeans or corn, regardless of variety, description or category ("product"). either: (1) by entering transactions directly with CGB; or (2) where CGB sends or receives product involving any third party which Precision Alliance Group, Precision Soya and/or Alliance Production, or any subsidiary or division of any of the foregoing, participates in or provides services for, at any and all company, subsidiary or division locations, including, but not limited to, the

London, Ohio and New Castle, Indiana facilities.[4]

(Doc. No. 103, Ex. A).

No motion to enforce the subpoena has ever been filed, but Plaintiffs' counsel advised the Court at oral argument that Precision Soya was still (at least as of May 9, 2006) producing documents responsive to the subpoena.

For the reasons set forth above with respect to the Merchandiser Notebooks, Defendant was not required to produce these documents.  That is, they are not within the scope of Document Request No. 17 as narrowed by Mr. McNamee's letter of January 29, 2004.

Because Defendant was not obliged to produce these documents, it is not at fault for the fact that they were produced after the discovery cut-off.  Plaintiffs' Motion for Sanctions with respect to the Precision Soya documents is therefore denied.

Given the speed with which decisions are needed on the currently pending Motions, the Court will forebear any further comment on the merits of this Motion, particularly Plaintiffs' counsel's argument about civility.

May 16, 2006.

                                         s/ Michael R. Merz
                                    Chief United States Magistrate Judge

---

[4]The careful reader will note that the entire second paragraph is a very careful and thorough definition of the phrase "doing business with," but that phrase is not used at all in the first paragraph or anywhere else in the subpoena.  Read literally, the subpoena is unintelligible: it does not tell Precision Soya what it is commanded to produce.  One assumes Plaintiffs intended that the defined phrase be inserted after the word "foregoing" in the first paragraph.