# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

PRECISION SEED CO., et al.,

:

      Plaintiffs,                            Case No. 3:03-cv-079

:

    -vs-                                 Chief Magistrate Judge Michael R. Merz

CONSOLIDATED GRAIN & BARGE
 COMPANY,

:

      Defendant.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY BY GREGORY H. TOMAN RELATING TO DAMAGES ARISING FROM CGB'S ALLEGED MISAPPROPRIATION OF THE SEEDS MANUAL

This case is before the Court on Defendant's Motion *in Limine* to Exclude Testimony by Gregory H. Toman Relating to Damages Arising from CGB's Alleged Misappropriation of the Seeds Manual (Doc. No. 139) and Plaintiffs' Memorandum in Opposition (Doc. No. 156).

Gregory H. Toman is tendered by Plaintiffs as an expert on financial damages; his Report was filed with the Court on July 7, 2005 (Doc. No. 96). Mr. Toman is a certified public accountant by profession. He received his Bachelor of Business Administration degree *magna cum laude* from the University of Dayton in 1979 and has practiced his profession ever since, receiving his certification as a public accountant in 1981. His Report indicates he has experience in litigation consulting services, damage analysis, business valuation, and expert testimony.

While Mr. Toman indicated he was prepared to offer four opinions on damages, only his opinion regarding Plaintiffs' damages resulting from the alleged misappropriation of the Seeds Manual is at issue on the instant Motion (Motion, Doc. No. 139, at 2.) His entire opinion as to this

1

item of damages is based on his review of three pages of documents produced by Defendant in discovery and attached to the Motion as Exhibit 2. Those documents comprise "Agreement Summaries" for sales of certain soybean seeds designated S[eed] C[onsultants] 388 and Diener 438C during 2002/2003 (157,500 bushels) and 2003/2004 (260,000 bushels). During the first period, CGB sold these soybeans to Tomen at a premium of $.058 per bushel over the CIF NOLA price; during the second period, the premium was $0.82 per bushel.

Mr. Toman relied upon that information and three assumptions to arrive at a calculated damages figure for the trade secret misappropriation of $152,275. The assumptions were that (1) Consolidated used Mr. Martin's trade secret(s) in some way in generating the sales to Tomen, (2) that the premium price received by Consolidated constituted profit, and (3) that Consolidated and Mr. Martin had agreed to split equally the profits from use of the Seeds Manual. All the assumptions were communicated to him by Mr. Martin, and Mr. Toman agreed that if any of those assumptions was incorrect, his figure would be wrong.

Mr. Toman has never rendered a supplemental or revised expert report.

### 1. Assumption Number One: Consolidated Used Plaintiffs' Trade Secret

Defendant argues first that there is no evidence to support the assumption that the seeds referenced in the Agreement Summaries were processed using any trade secret of the Plaintiffs.

Plaintiffs' first response is that they now have discovered additional documents on which Mr. Toman will base his opinion. The Court left the window open for the use of such documents in its Decision and Order Granting Defendant's Motion *in Limine* to Exclude Evidence Relating to Damages Not Disclosed in Plaintiffs' Interrogatory Response and in Expert Report (Doc. No. 144) when it held:

> If Mr. Toman states in his expert report that the amount of damages from imposing a reasonable royalty rate is dependent on the number of bushels Consolidated would have sold and Plaintiffs can show the number of bushel projection they rely on was made by Consolidated in documents which Consolidated should have produced earlier but did not produce until the end of discovery or which Plaintiffs had to obtain from Precision Soya, then Mr. Toman may base his testimony on that figure.

*Id*. at 12.  That window is now closed because the Court has held, in denying Plaintiffs' Motion for Sanctions, that Consolidated was under no duty to produce the documents Plaintiffs have obtained by subpoena from Precision Soya (Decision and Order Denying Plaintiffs' Motion for Sanctions, Doc. No. 175).  Furthermore, at the time the Court previously ruled on Mr. Toman's testimony, it had not read his Report.  Having now done so, the Court notes that he does not base his damages figure in any way on a projected or assumed reasonable royalty rate.  Instead, the $152,275 figure is based on a lost profits analysis.  Thus, based on the prior Decision, Mr. Toman may not base his testimony on any evidence relating to damages not disclosed in Plaintiffs Interrogatory Response or in Mr. Toman's Report.

With respect to the assumption that the sales reflected in the Agreement Summaries were sales Consolidated made as a result of misappropriating Plaintiffs' trade secrets, the Court is unable to determine at this time whether Plaintiffs will be able to produce evidence at trial to that effect.  Obviously, Mr. Toman can base his testimony on that assumption only if there is competent evidence supplied from some other witness sufficient to permit the jury to conclude by a preponderance of the evidence that the misappropriation occurred and these sales were a result.  The Court is not prepared at this point to conclude that Plaintiffs will not be able to offer such evidence.  Defendant's Motion in Limine as to the first assumption is denied.

**2.    Assumption Number Two: The Premium Price Represented Profit**

3

It is very clear from the testimony referenced in the instant Motion (Doc. No. 139 at 8-11) that the premium price received by Consolidated for the soybeans shown in the Agreement Summaries with Tomen do not represent profit. It is elementary microeconimcs that, to calculate a profit, one must deduct cost from price. See Black's Law Dictionary, 7th edition at 1226-1227. The premium figure is a price figure – the price per bushel at which Consolidated sold these beans above the CIF NOLA[1] price. Multiplying the premium per bushel times the number of bushels sold gives the gross premium.

Mr. Toman himself says that he does not have as final lost profits figure on the misappropriation claim, that in order to calculate it he needs "complete financial information" from Consolidated on its soybean business related to the Seed Program (Doc. No. 96 at 8). In particular he says he needs to "[o]btain Consolidated's gross profit and profit margin for 2001 through date of trial for the soy bean described in the Seed Program." *Id*. at 9.

Plaintiffs simply do not respond to this argument. They claim that because "[d]amages in trade secrets [cases] are difficult to calculate," Mr. Toman's testimony does not have to be definite (Memorandum in Oppostion, Doc. No. 156, at 4). Plaintiffs are correct, as the cases they cite hold and this Court has already acknowledged in the prior Decision regarding Mr. Toman's projected testimony, that there are a number of ways to prove damages in a trade secrets case, a number of different theories of damages. However, Mr. Toman has adopted one of those theories. He purports to be projecting lost profits – which is one of the ways of calculating such damages – and he purports to give a definite figure based on that particular methodology and assumptions.

The methodology is not sound: gross premium price is not the same thing as gross profit, much less net profit. Mr. Toman acknowledges as much when he says that he needs to obtain

---

[1]C.I.F. NOLA means the price includes the cost of the goods plus insurance and freight to the destination of New Orleans, Louisiana. Black's Law Dictionary, 7th edition, at 350.

4

Consolidated's gross profit and profit margin for the years in question. That was in his July, 2005, Report. As noted above, he has never supplemented that Report. Plaintiffs' Supplemental Response to Interrogatory No. 20 does not indicate any change in opinion on Mr. Toman's part as to the damages Plaintiffs suffered as a result of the trade secret misappropriation. Obviously, then, he has not acquired the additional information he says he needed to provide an accurate opinion.

Insofar as Mr. Toman's methodology relies on assuming that gross premium receipts equals profits, his methodology is plainly unsound as a matter of elementary economics. Therefore, he may not testify that Plaintiffs had $152,275 in damages from the Seeds Manual misappropriation. In that regard, the Motion in Limine is sustained.

### III. Assumption Three: The Profits Would Be Split Equally

Mr. Toman's third assumption is that the profits would have been split equally. This assumption is based entirely, according to Mr. Toman's deposition testimony, on Mr. Martin's having told him that that was the agreement between the parties.

Plaintiffs assert there is evidence for this assumption because there is evidence of an agreement between the parties to split the profits. They direct the Court's attention to a two-page document labeled "Agreement #2 which is attached as Exhibit B to their Memorandum in Opposition and which speaks of sharing profits and risks of the "venture." The Court of course does not know what Agreement #2 is: there has as yet been no testimony to establish its admissibility or its context. The Court declines to speculate what Agreement #2 might be competent to prove once it is offered and admitted.

One thing Agreement #2 may not be offered to prove is that the parties had an oral partnership because Judge Rose has already granted summary judgment on that claim. Thus if it is the case that Mr. Martin's assumption of a 50/50 split of profits – which he passed on to Mr. Toman

5

-- was based on his belief that he was in partnership with Defendant, then the assumption may not come into evidence and may not form the basis of an opinion by Mr. Toman. If Plaintiffs have some other method of showing how Mr. Martin arrived at his assumption or of showing why a 50% split of the profits would be commercially reasonable royalty rate for the trade secrets, then they may have sufficient evidence to ground Mr. Toman's third assumption. Of course, if they have that evidence, they do not really need Mr. Toman to offer an opinion: it really is a matter of lay knowledge what 50% of any given figure is. However, the Court will not preclude Mr. Toman's calculating 50% for the jury if there is some admissible number that he can apply the calculation to.

In sum, the Motion in Limine as to Mr. Toman's third assumption is granted insofar as the assumption is based on an alleged oral partnership and otherwise denied.

## Conclusion

The Motion is granted in part and denied in part as set forth above.

May 16, 2006.

s/ **Michael R. Merz**
Chief United States Magistrate Judge
